November 10, 2011.

**Rafael MATOS, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 99 Cr. 137 (WHP).**

United States District Court, S.D. New York.

Feb. 16, 2012.

Christopher DiMase, U.S. Attorney's Office, SDNY, New York, NY, for Respondent.

Wayne Wiseman, Thatcher Law Firm LLC, Greenbelt, MD, for Petitioner.

### MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge.

Petitioner Rafael Matos ("Matos") seeks a writ of error *coram nobis* under the All Writs Act, 28 U.S.C.A. § 1651(a), to vacate his guilty plea or modify his conviction. Matos claims ineffective assistance of counsel. Specifically, he claims that his attorney failed to advise him, or erroneously advised him, of the potential immigration consequences of his plea. For the following reasons, Matos' petition is denied.

### BACKGROUND

On February 16, 1999, Matos pled guilty to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. (Plea Transcript, dated Feb. 16, 1999 ("Pl. Tr."), at 11–28.) Thereafter, Matos cooperated with the Government. At sentencing, on January 18, 2001, the Government moved for a downward departure due to Matos' substantial assistance. (Sentencing Transcript, dated Jan. 18, 2001 ("Sent. Tr."), at 9; Government 5K1.1 Letter, dated Dec. 4, 2000.) This Court granted the

Government's motion and principally sentenced Matos to a probationary term, with a special condition of six months home confinement. (Sent. Tr. at 15.) Matos did not appeal or file a motion for post-conviction relief.

Nine years later, the Department of Homeland Security ("DHS") initiated deportation proceedings against Matos when he reentered the United States following a trip abroad. (Defendant's Response to Government's Opposition to Motion to Withdraw Guilty Plea, dated Sep. 19, 2011 ("Response") at 1; Notice to Appear, dated July 16, 2010 at 3.) Matos appealed DHS' removal determination. (Response at 1; Decision and Order of the Immigration Judge, dated June 13, 2011 ("Immigration Order") at 1–2.) An Immigration Judge denied his appeal and ordered Matos' removal. The Immigration Judge concluded that Matos' conviction for conspiracy to commit mail fraud was "an offense that involves fraud or deceit for which the loss to the victim or victims exceeded $10,000" and qualified as an aggravated felony pursuant to 8 U.S.C. § 1101(a)(43)(M)(i). (Immigration Order at 4.) Aggravated felonies are classified as deportable offenses. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Thereafter, an Immigration Judge ordered Matos' removal. (Immigration Order at 8.)

On February 28, 2011, Matos moved to "withdraw" his guilty plea. (Motion to Withdraw Guilty Plea, dated Feb. 6, 2011 ("Motion to Withdraw").) On August 16, 2011, this Court stayed all further immigration proceedings pending the outcome of this petition. (Order, dated Aug. 16, 2011, ECF No. 41 ("August Order").)

### DISCUSSION

 Matos seeks a writ of error *coram nobis*[1] to vacate his guilty plea, or

---

1. Matos's initial *pro se* filing is entitled a "Motion to Withdraw Guilty Plea." Pursuant

modify his conviction to reduce the loss amount below the ten thousand dollar aggravated felony threshold. *Coram nobis* relief is "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States,* 146 F.3d 88, 89–90 (2d Cir.1998). When "reviewing a petition for the writ, a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." *United States v. Mandanici,* 205 F.3d 519, 524 (2d Cir.2000).

▮ To prevail, a petitioner must demonstrate that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting the writ." *Fleming,* 146 F.3d at 90 (quoting *Foont v. United States,* 93 F.3d 76, 79 (2d Cir.1996)).

The Government concedes that Matos continues to suffer legal consequences stemming from his conviction of an aggravated felony that may be remedied by a writ. (*See* Supplemental Memorandum in Opposition to Motion to Withdraw Guilty Plea, dated June 15, 2011 ("Supplemental Opposition") at 8, n. 9)

Sound reasons also exist for Matos' failure to seek appropriate earlier relief. *Cf. United States v. Kwan,* 407 F.3d 1005, 1014 (9th Cir.2005) (finding "sound reasons" for delay when writ of error *coram nobis* was filed after removal proceedings were re-initiated) *abrogated on other*

*grounds by Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1484, 176 L.Ed.2d 284 (2010). Matos resided in the United States without incident for more than nine years. (Response at 1. *See also* Immigration Order at 1, 6.) Matos promptly challenged the Government's effort to deport him.

Thus, the issue is whether Matos can demonstrate compelling circumstances warranting issuance of the writ. The Supreme Court emphasized that "[c]ontinuation of litigation after final judgment ... should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Fleming,* 146 F.3d at 90 (quoting *Morgan,* 346 U.S. at 511, 74 S.Ct. 247). A violation of a defendant's Sixth Amendment right to effective assistance of counsel is one such compelling circumstance. *See Qiao v. United States,* No. 07–CV–3727 (SHS), 2007 WL 4105813, at *4–5 (S.D.N.Y. Nov. 15, 2007).

## I. *Ineffective Assistance of Plea Counsel*

Matos argues ineffective assistance of counsel because his attorney: (1) failed to advise or erroneously advised him of the potential immigration consequences of his plea, and (2) failed to negotiate a plea that would result in a conviction for a non-aggravated felony offense.

▮ To establish ineffective assistance of counsel, Matos must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms, and (2) affirmatively prove prejudice arising from counsel's allegedly defi-

to the All Writs Act, 28 U.S.C. § 1651(a), and with the consent of the Government and Matos' counsel, this Court treats the motion as a writ of error *coram nobis* based on the relief sought. *See Polanco v. United States,* 803 F.Supp. 928, 930 (S.D.N.Y.1992) (citing *Unit-*

*ed States v. Morgan,* 346 U.S. 502, 505, 74 S.Ct. 247, 98 L.Ed. 248 (1954)) (treating a *pro se* defendant's motion as a *coram nobis* petition despite its label as a petition for a writ of habeas corpus).

cient representation." *United States v. Cohen,* 427 F.3d 164, 167 (2d Cir.2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (internal punctuation and citations omitted); *Rogers v. United States,* No. 07–CV–7179 (WHP), 2012 WL 225805, at *2 (S.D.N.Y. Jan. 11, 2012). The first prong of the *Strickland* test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. The second prong requires that Matos show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

### A. Prejudice

■■■ A petitioner seeking vacatur of his guilty plea, must demonstrate that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore,* — U.S. ——, 131 S.Ct. 733, 745, 178 L.Ed.2d 649 (2011) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). This inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the consequences of various legal options, and any circumstances that may affect a decision to plea. *See e.g., Premo,* 131 S.Ct. at 744; *United States v. Couto,* 311 F.3d 179, 187 n. 9 (2d Cir.2002); *Qiao,* 2007 WL 4105813, at *4. A petitioner shoulders the burden to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla,* 130 S.Ct. at 1485.

In 1998, Government agents recorded several phone conversations between Matos and a co-conspirator where Matos requested fraudulent water bill reductions for accounts held by Carmen Leonard and Frantz Germain (the "Leonard account" and "Germain account," respectively). (Affidavit of Nancy McNamara, dated Oct. 20, 1998 ("McNamara Aff."), ¶¶ 35, 98–101.) Thereafter, the bills on those accounts were reduced or eliminated. (McNamara Aff. ¶ 99.) New York City's ("City") records revealed that Matos was responsible for losses of $26,437 on the Germain account and $2,402 on the Leonard account (PSR ¶ 35). ((Presentence Investigation Report, dated Feb. 5, 2001 ("PSR"), ¶ 35, 37; (Government Letter, dated Dec. 26, 2000, Ex. A, Supplemental Opposition at 2.) The records also showed that Matos attempted to obtain an additional fraudulent loss of $4,416 on the Leonard account. (PSR ¶ 35.)

■■■ The principal evidence against Matos consisted of the recorded conversations, each of which was corroborated by City records, showing that bills linked to the Leonard and Germain accounts were reduced. (PSR ¶¶ 31–32; McNamara Aff. ¶¶ 98–101.) Confronted with audio recordings, telephone records linking him to the calls, and City records demonstrating a loss amount in excess of $10,000, Matos faced almost certain conviction on the charge to which he pled guilty. The overwhelming evidence of guilt forecloses any reasonable probability that Matos would have proceeded to trial rather than accept the Government's offer. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. But Matos now insists that had he known of the potential immigration consequences, he would have rejected the plea bargain. This assertion, in the face of imminent deportation, is self-serving. It also ignores the consequences of conviction after trial and his stated concerns at the time of his plea and sentence.

Matos' submissions on this petition provide differing accounts of the legal advice he received regarding the immigration

consequences of his guilty plea. Initially, Matos claimed that he was "misadvised as to the consequences of his plea, particularly regarding the fact that deportation following the entry of his plea was mandatory." (Motion to Withdraw at 2.) In his second submission, he maintained that "no one, not my attorney, not the Assistant U.S. Attorney, nor the Judge advised me that my pleading guilty and being convicted of this crime would affect my immigration status in the United States." (*Pro Se* Reply dated May 10, 2011 ("*Pro Se* Reply") at 1.) Finally, in his third submission, he insisted that he "was repeatedly assured by the Assistant United States Attorney Andrea L. Labov, and [his] attorney, Harriet B. Rosen, that [he] faced no prospect of being deported in connection with [his] guilty plea." (Affidavit of Matos, dated Aug. 3, 2011, ¶ 9.)

Matos' claims are contradicted by the plea agreement and his statements under oath during his allocution. Matos acknowledged that the plea agreement represented his "complete and total understanding of the entire agreement between the government, [his] attorney, and [himself.]" (Pl Tr. at 15.) The plea agreement makes no reference to immigration consequences. And Matos' claims are also contradicted by the sworn affidavit of his former attorney. (Affidavit of Harriet B. Rosen, dated Dec. 13, 2011, ¶ 10 ("I am certain that I did not assure Mr. Matos that he would not face deportation as a result of his plea—first, because I do not recall discussing deportation and second, because I made it a practice never to provide such assurances to clients, whether about sentencing, deportation or other consequences of a guilty plea.") Matos' self-serving and unsubstantiated allegations are not credible.

Moreover, the hypothetical decision to proceed to trial would also likely preclude Matos from entering into a cooperation agreement and cause him to lose the benefit of the Government's application for a downward departure for substantial assistance under § 5K1.1. As this Court explained at sentencing, "because of [the] substantial assistance [Matos] provided to the government ... [this Court is] going to sentence you to a term of three years of probation that is going to include six months of home confinement." (Sent. Tr. at 15). Even if Matos had not cooperated, the decision to go to trial instead of accepting the Government's plea offer would preclude Matos from receiving a two level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Because Matos' sentence was imposed before *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), this Court likely would have sentenced Matos within the calculated guideline range of twenty-one to twenty-seven months.

Further, at sentencing, Matos explained his paramount concern when he addressed the Court:

"Yes, your Honor. I'm very sorry for what I did. I tried to help the FBI for what I did. Anything come to me, you know, I would like to be outside. I got my wife, my mother. I mean, can you just give me a break? Give me a year probation, whatever you want, just don't put me inside."

(Sent. Tr. at 12.) Matos' own words make clear that he wanted to avoid imprisonment. Entering a plea and cooperating with the Government afforded him that chance.

Proceeding to trial would not have altered the immigration consequences. A conviction after trial would, in all likelihood, ensure that Matos was imprisoned for a significant term of incarceration before facing the same immigration consequences. Given these circumstances, it would have been irrational for Matos to

proceed to trial. *See Premo*, 131 S.Ct. at 744 (grave punishment petitioner would have faced at trial suggested that it would have been irrational for him to reject a plea deal). This Court rejects Matos' assertions to the contrary. *See Eber–Schmid v. Cuomo*, No. 09–CV–8036 (BSJ), 2010 WL 1640905, at *28 (S.D.N.Y. Apr. 22, 2010) (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir.1998)) (Strickland's "but for" test requires "some further 'objective evidence' beyond a petitioner's 'self-serving, post-conviction testimony.' "). Accordingly, Matos fails to demonstrate that rejecting the plea "would have been rational under the circumstances." *Padilla*, 130 S.Ct. at 1485.

**B. Performance of Plea Counsel**

As the Supreme Court made clear, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. When it is "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. This is so "even where counsel has committed serious error, especially when the Government's case is strong." *United States v. Weisser*, 417 F.3d 336, 343 (2d Cir.2005) (citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir.1991) (internal punctuation and citations omitted)).

When Matos pled guilty, an attorney's performance was objectively unreasonable if he or she "affirmatively misrepresented" the immigration consequences of a guilty plea. *Couto*, 311 F.3d at 187. However, "an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, [did] not fall below an objective standard of reasonableness." *Couto* at 187. Recently, the Supreme Court altered the standard and held that an attorney "must inform her client whether his plea carries a risk of deportation." *See Padilla*, 130 S.Ct. at 1486.

Matos can only avail himself of the *Padilla* standard if it applies retroactively. Neither the Supreme Court nor the Second Circuit has weighed in on the issue of *Padilla's* retroactivity. *See United States v. Obonaga*, No. 10–CV–2951 (JS), 2010 WL 2710413, at *1 (E.D.N.Y. Jun. 30, 2010); *Ellis v. United States*, 806 F.Supp.2d 538, 548–49 (E.D.N.Y.2011). And there is no consensus among other circuits. *Compare Chaidez v. United States*, 655 F.3d 684, 694 (7th Cir.2011) (finding *Padilla* is not retroactive); *United States v. Chang Hong*, 671 F.3d 1147, 1158–59 (10th Cir.2011) (same), *and United States v. Orocio*, 645 F.3d 630, 641 (3rd Cir.2011) (finding *Padilla* should be applied retroactively). This Court need not decide this question because Matos fails to demonstrate any prejudice as a result of counsel's alleged unreasonable performance.

**II. *Modification of Fraud Amount***

█ As an alternative ground for relief, Matos claims that his attorney was ineffective because she did not negotiate a loss amount less than $10,000. But the assertion of weak negotiation skills cannot sustain an ineffective assistance claim. *See Chhabra v. United States*, No. 09–CV–1028 (LAP), 2010 WL 4455822, at *5–6 (S.D.N.Y. Nov. 3, 2010),

During his allocution, Matos admitted that he committed the crime charged. (Pl. Tr. at 14–28). Such self-inculpatory statements "carry a strong presumption of verity ... and are generally treated as conclusive." *Eisa v. Immigration and Customs Enforcement*, No. 08–CV–6204 (FM), 2008 WL 4223618, at *10 (S.D.N.Y.2008) (quoting *Adames v. United States*, 171 F.3d 728,

732 (2d Cir.1999) (citations and internal quotation marks omitted)). In his many submissions, Matos neither denies his guilt nor asserts any defense. The fraud loss clearly exceeded $10,000. Accordingly, Matos' argument that the loss amount should be modified to reflect an amount less than $10,000 is contrary to the plain facts surrounding his conviction.

## CONCLUSION

For the foregoing reasons, Matos' petition for a writ of error *coram nobis* is denied. Because Matos has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. 28 U.S.C. § 2255(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Additionally, this Court's prior Order staying deportation proceedings is lifted. The Clerk of Court is directed to terminate all pending motions and mark the case closed.

SO ORDERED.