FILED
United States Court of Appeals
Tenth Circuit

September 1, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.                                                                No. 10-6294

CHANG HONG,

    Defendant - Appellant.

---

**ORDER**

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

This matter is before the court to amend, *sua sponte*, the Opinion issued originally in this appeal on August 30, 2011. The amendment is limited to adding a citation to *Chaidez v. United States*, ___ F.3d ___, 2011 WL 3705173 (7th Cir. Aug. 23, 2011). The clerk is directed to file the amended decision, which is attached to this order, *nunc pro tunc* to the original filing date.

Entered for the Court,

ELISABETH A. SHUMAKER
Clerk of Court

FILED
United States Court of Appeals
Tenth Circuit

August 30, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

    v.

CHANG HONG,

      Defendant-Appellant.

No. 10-6294

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CV-10-00978)**

---

*Submitted on the brief*[*]:

Joan L. Lopez, Oklahoma City, Oklahoma, for Appellant.

Jonathon E. Boatman, Assistant United States Attorney, Office of the United States Attorney, Oklahoma City, Oklahoma, for Appellee.

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

[*] No brief was filed on behalf of the Plaintiff-Appellee pursuant to 10th Cir. R. 22.1(B). After examining the brief and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

**TYMKOVICH**, Circuit Judge.

Chang Hong seeks to appeal the district court's denial of his motion for relief under 28 U.S.C. § 2255 as untimely. He asserted claims of ineffective assistance of counsel, alleging his counsel failed to advise him of the immigration consequences of his guilty plea as required by *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). Hong argues *Padilla* is a new rule of constitutional law that applies retroactively to cases on collateral review, making his § 2255 motion timely. We construe Hong's notice of appeal and opening brief as a request for a certificate of appealability (COA) to appeal the district court's order.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we find *Padilla* is a new rule of constitutional law, but it does not apply retroactively to cases on collateral review. Therefore, Hong's § 2255 motion was untimely, and we conclude Hong has not made a substantial showing of the denial of a constitutional right.

Accordingly, we DENY Hong's request for a COA and DISMISS his appeal.

## I. Background

Hong is a citizen of South Korea and was a permanent legal resident of the United States. In September 2007, he pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute ecstasy, marijuana, and

2

hydro-marijuana.  In February 2008, he was sentenced to 37 months'

imprisonment and did not file a direct appeal.

In August 2010, while in federal prison, Hong received a Notice to Appear

from the United States Department of Homeland Security, which stated Hong was

being placed in immigration removal proceedings.  The notice asserted Hong was

subject to removal from the United States because of his drug conspiracy

conviction.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an

aggravated felony at any time after admission is deportable."), (a)(2)(B)(i) ("Any

alien who at any time after admission has been convicted of a violation of (or a

conspiracy or attempt to violate) any law or regulation of . . . the United States

. . . relating to a controlled substance . . . is deportable.").

In September 2010, Hong filed a motion under 28 U.S.C. § 2255 seeking to

vacate his conviction and sentence as well as to withdraw his guilty plea on the

grounds of ineffective assistance of counsel.[2]  Hong alleged his counsel failed to

advise him of the immigration consequences of his guilty plea.  In support, he

cited *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), wherein the Supreme Court

held that "before a non-citizen criminal defendant enters a guilty plea, his counsel

has a duty under the Sixth Amendment to inform him 'whether his plea carries a

---

[2]  Hong also requested, in the alternative, that the court grant a writ of
coram nobis.  The district court denied this alternative request, finding Hong was
ineligible for such relief because he was still in custody.  *See United States v.
Torres*, 282 F.3d 1241, 1245 (10th Cir. 2002).  Hong does not challenge this
decision on appeal, and we do not address it.

risk of deportation.'" *Waugh v. Holder*, 642 F.3d 1279, 1283 (10th Cir. 2011) (quoting *Padilla*, 130 S. Ct. at 1486).

On December 15, 2010, the district court denied Hong's § 2255 motion as untimely because (1) it was filed outside the one-year statute of limitations period under § 2255(f)(1), and (2) *Padilla* was not a new rule of constitutional law and did not apply retroactively to cases on collateral review, so § 2255(f)(3) did not provide the correct starting date for the statute of limitations. This appeal followed.

Meanwhile, on December 28, 2010, Hong was released from federal prison after completing his sentence for drug conspiracy.[3] Due to an immigration detainer, Hong was transferred to the custody of United States Immigration and Customs Enforcement upon his release. He later appeared at an immigration removal hearing, and a removal order was entered against him on April 26, 2011. Hong did not appeal the removal order, and on June 28, 2011, he was removed from the United States.

---

[3] Although Hong has completed his sentence and has been deported, his habeas petition challenging his conviction is not moot. *See Prost v. Anderson*, 636 F.3d 578, 582 n.3 (10th Cir. 2011) ("The Supreme Court has told us that a habeas petition challenging a conviction isn't mooted by a prisoner's release from incarceration because the Court is 'willing to presume' that the fact of conviction 'has continuing collateral consequences.'") (quoting *Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998)). Hong's drug conspiracy conviction renders him ineligible to receive a visa or for admission to the United States. *See* 8 U.S.C. § 1182(a)(2)(A)(I) ("[A]ny alien convicted of . . . a violation of (or a conspiracy or attempt to violate) any law . . . [of] the United States . . relating to a controlled substance . . . is inadmissible.").

4

## II. Discussion

A defendant may not appeal the denial of a § 2255 motion unless we first issue a COA. 28 U.S.C. § 2253(c)(1)(B). We will issue a COA only when the defendant "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To meet this burden, Hong must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Hong fails to make this showing.

### A. Section 2255 Motions and Statute of Limitations

A defendant must file a § 2255 motion within one year of the date his conviction became final. *See* § 2255(f)(1). Hong's conviction became final on February 29, 2008, but his § 2255 motion was filed over two years later, on September 10, 2010. Therefore Hong's § 2255 motion was untimely under § 2255(f)(1).

Nonetheless, Hong argues his petition was timely under § 2255(f)(3). Under that provision, the one-year limitations period to file a § 2255 motion runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3).

5

Hong contends the Supreme Court's decision in *Padilla* created a new rule that applies retroactively for the purposes of § 2255(f)(3). Under his theory, his § 2255 motion is timely because *Padilla* was decided on March 31, 2010, and his § 2255 motion was filed within one year of that decision, on September 10, 2010.

Hong is incorrect. Although *Padilla* establishes a new rule of constitutional law, under the Supreme Court's rubric for determining retroactivity established in *Teague v. Lane*, 489 U.S. 288 (1989),[4] *Padilla* does not apply retroactively to cases on collateral review. Therefore, § 2255(f)(3) does not

[4] Although *Teague* arose in the context of a § 2254 petition and Hong's motion arises under § 2255, in accord with other circuits, we have held that "*Teague*'s nonretroactivity doctrine applies equally to habeas petitions brought under sections 2254 and 2255." *Daniels v. United States*, 254 F.3d 1180, 1194 (10th Cir. 2001) (en banc). While clearly bound by our prior en banc decision, we note the Supreme Court has never applied *Teague* to a § 2255 petition. *See Danforth v. Minnesota*, 552 U.S. 264, 269 n.4, 281 n.16 (2008) (noting the opinion does not consider whether *Teague* applies to cases under § 2255 but that lower federal courts have applied *Teague* to § 2255 motions and that much of the reasoning applicable to petitions under § 2254 is "equally applicable" to § 2255 motions); *cf. Reina-Rodriguez v. United States*, No. 08-16676, – F.3d –, 2011 WL 2465462, at *5 (9th Cir. June 22, 2011) ("[T]here is some doubt under current Supreme Court jurisprudence whether *Teague* applies to *federal* prisoners . . . who seek federal habeas relief."); *Duncan v. United States*, 552 F.3d 442, 444 n.2 (6th Cir. 2009) ("It is not entirely clear that *Teague*'s framework is appropriate for federal habeas petitions under 18 U.S.C. § 2255 because many of the comity and federalism concerns animating *Teague* are lacking."); *see also Valentine v. United States*, 488 F.3d 325, 341–45 (6th Cir. 2007) (Martin, J., concurring in part and dissenting in part) (questioning the applicability of *Teague* in federal habeas cases); J. Thomas Sullivan, *Danforth, Retroactivity, and Federalism*, 61 OKLA. L. REV. 425, 463 (2008) ("The . . . question deliberately left unanswered by the *Danforth* Court involves the application of the *Teague* retroactivity doctrine to post-conviction actions brought by federal defendants pursuant to 28 U.S.C. § 2255.").

6

apply, and Hong's § 2255 motion was untimely under § 2255(f)(1).

B. Retroactivity

In *Teague*, and subsequent cases interpreting its analysis, the Supreme Court constructed and refined a three-step process to determine retroactivity. We apply it here to decide whether *Padilla* announced a new rule of constitutional law and whether it applies retroactively to Hong's conviction. *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). We first must determine whether Hong's conviction was final before the Supreme Court's decision in *Padilla*.[5] *Beard v. Banks*, 542 U.S. 406, 411 (2004).

Second, we assess whether the rule in *Padilla* is actually "new," based on whether a "court considering [Hong]'s claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [announced in *Padilla*] was required by the Constitution." *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997).

Third, if we determine the rule in *Padilla* is new, we will apply it to Hong's conviction only if that new rule "falls within either of the two narrow exceptions to nonretroactivity." *Beard*, 542 U.S. at 411; *see Teague*, 489 U.S. at 310 ("Unless they fall within an exception to the general rule, new constitutional rules

---

[5] A conviction and sentence becomes final for the purposes of *Teague* "when the availability of a direct appeal has been exhausted and the time for filing a petition for certiorari with the Supreme Court has elapsed or the Court has denied a timely petition for certiorari." *United States v. Dago*, 441 F.3d 1238, 1243 (10th Cir. 2006) (citing *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994)).

of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."). We discuss the exceptions in more detail below.

1. Final Conviction

Because Hong declined to file a direct appeal, his conviction became final 14 days after the district court entered judgment on February 29, 2008. *See* Fed. R. App. P. 4(b)(1)(A)(I) (giving a defendant 14 days after entry of judgment to file a notice of appeal). *Padilla* was decided more than two years later, on March 31, 2010. Hong's conviction was final before the Supreme Court's decision in *Padilla*. Therefore, we are left to determine whether *Padilla* announced a new rule of constitutional law and, if so, whether it falls within either of the *Teague* exceptions to the retroactivity bar.

2. New Rule

Step two of the *Teague* analysis requires us to assess whether *Padilla* represents a "new rule" of constitutional law. While a closer question, we conclude *Padilla* is a new rule of constitutional law because it was not compelled by existing precedent at the time Hong's conviction became final.

*a.* Padilla

In *Padilla*, the Court considered whether defense counsel has an obligation to advise his client that a guilty plea would make him subject to automatic deportation. Jose Padilla had pleaded guilty to drug trafficking in Kentucky state

court, and as a lawful permanent resident of the United States, he was subject to virtually mandatory removal because of his drug conviction.

Padilla sought state post-conviction relief from his guilty plea, alleging ineffective assistance of counsel. He argued he entered his guilty plea in reliance on his counsel's erroneous advice that the plea would not affect Padilla's immigration status. Ultimately, the Kentucky Supreme Court denied Padilla post-conviction relief and held the Sixth Amendment's guarantee of effective assistance of counsel did not protect him from erroneous advice regarding collateral consequences of a conviction, such as deportation or removal.[6]

The Supreme Court reversed and remanded the case. It found "constitutionally competent counsel would have advised [Padilla] that his conviction for drug distribution made him subject to automatic deportation." *Padilla*, 130 S. Ct. at 1478. Before addressing Padilla's claims, the Court surveyed the development of federal immigration law and noted "deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes." *Id.* (citation omitted). Because of this connection between conviction and removal, "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* (footnote omitted). Therefore, the Court

---

[6] With changes in immigration law, came changes in nomenclature from "deportation" to "removal." *See Padilla*, 130 S. Ct. at 1480 n.6. For our purposes, we treat the terms as interchangeable.

determined the "importance of accurate legal advice for noncitizens accused of crimes has never been more important." *Id.* at 1480.

The Court turned to Padilla's claims and considered whether his counsel rendered effective assistance as required by *Strickland v. Washington*, 466 U.S. 668 (1984). Before applying *Strickland*'s familiar two-part test of deficient performance and prejudice, the Court first clarified that it had "never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*." *Padilla*, 130 S. Ct. at 1481. The Kentucky Supreme Court had rejected Padilla's arguments because he claimed ineffective assistance with regard to collateral consequences of his plea—deportation—that the Kentucky Supreme Court ruled were outside the requirements of the Sixth Amendment.[7] The Supreme Court in *Padilla* stated the "collateral versus direct distinction" was not useful when considering a *Strickland* claim regarding the risk of deportation. *Id.* at 1482. Even though deportation proceedings are civil proceedings, based on the "unique nature of deportation," they were "nevertheless intimately related to the criminal process." *Id.* at 1481. This "close connection to the criminal process" made

---

[7] In accord with many other state and federal courts, before *Padilla* we also held that "deportation remains a collateral consequence of a criminal conviction, and counsel's failure to advise a criminal defendant of its possibility does not result in a Sixth Amendment deprivation." *Broomes v. Ashcroft*, 358 F.3d 1251, 1257 (10th Cir. 2004) *abrogated by Padilla v. Kentucky*, 130 S. Ct. 1473, 1481 n.9 (2010).

10

deportation "uniquely difficult" to classify as either a direct or collateral consequence. *Id.* at 1482. Rather than force deportation into one category, the Court concluded that *Strickland* applied to Padilla's claims because "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.*

Having determined *Strickland* applied, the Court then analyzed whether Padilla's counsel rendered assistance that fell below an objective standard of reasonableness. Prevailing professional norms long required defense counsel to advise their noncitizen clients of the risk of deportation, and with this, the Court stated it was "not a hard case in which to find deficiency." *Id.* at 1483. Padilla's counsel could have consulted the removal statutes and easily determined Padilla's guilty plea would make his removal virtually mandatory. Instead, his counsel gave Padilla the false assurance that his plea would not affect his immigration status.

While immigration consequences may have been clear in Padilla's case, the Court acknowledged immigration law is a complex subject matter. And in situations where the deportation consequences are unclear, defense counsel would still have a duty to advise a noncitizen client, but only the limited duty to advise him that pending criminal charges may have negative immigration consequences. But, as in Padilla's case, "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id.*

11

In sum, the Supreme Court in *Padilla* held that the seriousness and severity

of deportation as a consequence of a guilty plea makes it critical that defense

counsel "inform her client whether his plea carries a risk of deportation." *Id.* at

1486. Having distilled the Supreme Court's holding in *Padilla*, we turn to our

*Teague* analysis and consider whether *Padilla* is a new rule that retroactively

applies to cases on collateral review.

b. *New vs. Old Rule*

When the Supreme Court announces a rule, that rule's effect on a

defendant's conviction will differ based on whether the rule is "new" or "old" and

whether his case is pending on direct or collateral review. A "new" rule will

generally apply only to criminal cases pending on direct review, while an "old"

rule will apply to cases on both direct and collateral review. *Whorton*, 549 U.S.

at 416 (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). The key question

is whether a rule is old or new.

The Supreme Court admits it has "stated variously the formula for

determining when a rule is new." *O'Dell*, 521 U.S. at 156; *see also United States

v. Christensen,* 456 F.3d 1205, 1207 (10th Cir. 2006) ("The term *new rule* is

somewhat imprecise.").[8] A rule is new "within the meaning of *Teague* if it

'breaks new ground,' 'imposes a new obligation on the States or the Federal

_____

[8] In some sense, every rule announced in a Supreme Court decision could
be considered "new" if the Court had not previously ruled on the specific issue.
But for the purposes of a *Teague* analysis, our inquiry is more limited.

12

Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Graham v. Collins*, 506 U.S. 461, 467 (1993) (quoting *Teague*, 489 U.S. at 301). Conversely, a rule is old if a "court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." *O'Dell*, 521 U.S. at 156 (quotation and brackets omitted).

When making this judgment we consider whether "reasonable jurists could have differed as to whether" a rule was compelled or dictated by existing precedent. *Beard*, 542 U.S. at 414. "The new rule principle . . . validates reasonable, good-faith interpretations of existing precedents, . . . even if those good-faith interpretations are . . . contrary to later decisions." *United States v. Price*, 400 F.3d 844, 847 (10th Cir. 2005) (quoting *Graham*, 506 U.S. at 467). The inquiry recognizes that reasonable jurists may differ on the import of a Supreme Court decision.

"[T]he fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*." *Butler v. McKellar*, 494 U.S. 407, 415 (1990). "While there can be no dispute that a decision announces a new rule if it expressly overrules a prior decision, 'it is more difficult . . . to determine whether [the Court] announce[s] a

new rule when a decision extends the reasoning of [its] prior cases.'" *Graham*, 506 U.S. at 467 (quoting *Saffle v. Parks*, 494 U.S. 484, 488 (1990)).

With these principles in mind, we turn to *Padilla*. The starting point is whether *Padilla* represents a new rule or merely represents an application of the venerable *Strickland* rule to new facts. The central holding of *Padilla* is that defense counsel "must inform her client whether his [guilty] plea carries a risk of deportation" if those consequences are clear. 130 S. Ct. at 1486. Even if the consequences are not clear, defense counsel must still "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 1483. The majority's opinion focused on whether Padilla's counsel provided representation that fell below an objective standard of reasonableness and citations to *Strickland* run throughout. Without doubt, *Padilla* is a *Strickland* case.

While grounded in *Strickland*, we still conclude *Padilla* is a new rule of constitutional law. Before *Padilla*, most state and federal courts had considered the failure to advise a client of potential collateral consequences of a conviction to be outside the requirements of the Sixth Amendment. *See Padilla*, 130 S. Ct. at 1481 n.9 (collecting cases); *see also* Gabriel J. Chin & Richard W. Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas*, 87 CORNELL L. REV. 697, 699 (2002) ("[E]leven federal circuits, more than thirty states, and the District of Columbia have held that lawyers need not explain

14

collateral consequences [under the Sixth Amendment].").  All of these courts—including our own—thought the rule in *Padilla* was not dictated or compelled by Court precedent.  It goes without saying these are some of the "reasonable jurists" we must survey to determine if *Padilla* is a new rule.

In addition to this precedent, when assessing whether a rule is new, we have also considered the concurring or dissenting views of other Justices in the case.  For example, in *Christensen*, 456 F.3d at 1207, we examined whether *Shepard v. United States*, 544 U.S. 13 (2005), announced a new rule.  We looked to Justice O'Connor's dissent—which stated the Court's rule was not compelled by statute or Court precedent—and found it "dispositive" of whether *Shepard* announced a new rule of constitutional law.  *Christensen*, 456 F.3d at 1208.  We apply the same logic here for further guidance.

*Padilla*, a 7-2 decision, generated both a strong concurrence and dissent. In a concurrence, Justice Alito (joined by Chief Justice Roberts) stated "the Court's decision marks a major upheaval in Sixth Amendment law" and noted the majority failed to cite any precedent for the premise that a defense counsel's failure to provide advice concerning the immigration consequences of a criminal conviction violated a defendant's right to counsel.  *Padilla*, 130 S. Ct. at 1491 (Alito, J., concurring in judgment); *see also id.* at 1488 (noting the majority's "dramatic departure from precedent"); *id.* at 1491 ("[T]he Court's view has been rejected by every Federal Court of Appeals to have considered the issue thus

15

far."); *id.* at 1492 ("The majority seeks to downplay its dramatic expansion of the scope of criminal defense counsel's duties under the Sixth Amendment.").

Similarly, Justice Scalia in a dissent (joined by Justice Thomas), argued the Sixth Amendment right to counsel does not extend to "advice about the collateral consequences of conviction" and that the Court, until *Padilla*, had limited the Sixth Amendment to advice directly related to defense against criminal prosecutions. *Id.* at 1494–95 (Scalia, J., dissenting); *see also id.* at 1495 ("There is no basis in text or in principle to extend the constitutionally required advice regarding guilty pleas beyond those matters germane to the criminal prosecution at hand."). We take the concurrence and dissent as support for our conclusion that reasonable jurists did not find the rule in *Padilla* compelled or dictated by the Court's prior precedent.

We acknowledge those counter-arguments that *Padilla* is not a new rule—that is, why a court would have felt compelled to apply *Strickland* to deportation consequences of a guilty plea. For example, *Padilla* did not overturn any of the Court's prior precedent and is grounded in *Strickland*. In addition, even before *Padilla* was decided, the Court had already recognized the importance of considering potential immigration consequences when entering into a plea agreement. *See INS v. St. Cyr*, 533 U.S. 289, 322–23 (2001).

Despite these arguments, we think the better argument is that *Padilla* announced a new rule of constitutional law. While the Supreme Court had never

16

foreclosed the application of *Strickland* to collateral consequences of a conviction, it had never applied *Strickland* to them either. And lower courts had adhered to this direct versus collateral dichotomy. The departure from that longstanding legal distinction, and the application of *Strickland* to immigration consequences of a guilty plea, was an extension of *Strickland* into previously untread grounds. *See* Stephanos Bibas, *Regulating the Plea-Bargaining Market: From Caveat Emptor to Consumer Protection*, 99 CAL. L. REV. 1117, 1118 (2011) ("*Padilla v. Kentucky* marks a watershed in the Court's approach to regulating plea bargains."). We find a reasonable jurist at the time of Hong's conviction would not have considered Supreme Court precedent to compel the application of *Strickland* to the immigration consequences of a guilty plea. Indeed, we as a court did not feel so compelled prior to *Padilla*.

In sum, we find *Padilla* announced a new rule of constitutional law.[9]

We note one other circuit court to consider *Padilla*'s retroactivity reached the opposite conclusion, finding "*Padilla* followed directly from *Strickland* and

---

[9] The Seventh Circuit recently reached the same conclusion. In *Chaidez v. United States*, No. 10-3623, 2011 WL 3705173, at *8 (7th Cir. Aug. 23, 2011), it concluded that *Padilla* established a new rule, finding that the narrow definition of what constitutes an old rule in *Teague* "tips the scales" toward a new rule. Another circuit court, in an unpublished decision, doubted *Padilla* applied retroactively. *See United States v. Hernandez-Monreal*, 404 F. App'x 714, 715 n.1 (4th Cir. 2010) ("[N]othing in the *Padilla* decision indicates that it is retroactively applicable to cases on collateral review."). *See also Commonwealth v. Clarke*, 949 N.E.2d 892 (Mass. 2011) (concluding *Padilla* did not apply a new rule but merely extended *Strickland*).

17

long-established professional norms" and therefore was "an 'old rule' for *Teague* purposes." *United States v. Orocio*, No. 10-1231,– F.3d –, 2011 WL 2557232, at *7 (3d Cir. June 29, 2011). We disagree and believe *Padilla* marked a dramatic shift when it applied *Strickland* to collateral civil consequences of a conviction—a line courts had never crossed before.

The Third Circuit, while acknowledging deportation consequences never were considered within the scope of *Strickland* before *Padilla*, found that history unhelpful. *Orocio*, 2011 WL 2557232, at *4. Rather than rest its analysis on an "incomplete approach," it concluded "*Padilla* followed from the clearly established principles" of *Strickland*. *Id.* at *4, *6. The case "broke no new ground" and was "hardly novel" based on the prevailing professional norms. *Id.* at *6 (quotation omitted). *Padilla*'s application of *Strickland* was not new because defense counsel was "long required" to provide effective assistance regarding all "important decisions" that could affect the plea process, which included the immigration consequences of a guilty plea. *Id.* at *4. *Padilla* is "best read as merely recognizing that a plea agreement's immigration consequences" is the type of information a defendant would need when making important decisions about a plea bargain. *Id.* Therefore, "[f]ar from extending the *Strickland* rule into uncharted territory, *Padilla* reaffirmed defense counsel's obligations to the criminal defendant during the plea process." *Id.*

As discussed above, we disagree. *Padilla* extended the Sixth Amendment

right to effective counsel and applied it to an aspect of a plea bargain previously untouched by *Strickland*. *See Padilla*, 130 S. Ct. at 1491 (Alito, J., concurring in judgment) ("[T]he majority does not cite a single case, from this or any other federal court, holding that criminal defense counsel's failure to provide advice concerning the removal consequences of a criminal conviction violates a defendant's Sixth Amendment right to counsel."); *cf.* Bibas, 99 CAL. L. REV. at 1139 ("[T]he early signs are that *Padilla* was not a one-off decision but may have heralded the dawn of a new era."). *Padilla* is a new rule of constitutional law not because of *what* it applies—*Strickland*—but because of *where* it applies— collateral immigration consequences of a plea bargain.

### 3. Exceptions to the Retroactivity Bar

Having determined *Padilla* represents a new rule of constitutional law, we move to step three of the *Teague* analysis and consider whether *Padilla* applies retroactively to cases on collateral review.[10] As a new rule of criminal procedure,

---

[10] It is not readily apparent which court must declare that a new rule applies retroactively. We have held "*Teague*'s retroactivity analysis . . . determines whether the new rule is applicable to an *initial* motion for collateral habeas relief." *Browning v. United States*, 241 F.3d 1262, 1264 (10th Cir. 2001) (en banc). That is, we may apply *Teague* in the first instance and determine ourselves whether a new rule applies retroactively to initial habeas petitions. By contrast, for second or successive habeas petitions, "a new rule is made retroactive to cases on collateral review only when the Supreme Court *explicitly holds* that the rule it announced applies retroactively to such cases." *Bey v. United States*, 399 F.3d 1266, 1268 (10th Cir. 2005).

Other circuit courts have compared the language governing retroactivity in

(continued...)

*Padilla* will apply retroactively only if it falls within one of the two narrow exceptions to the retroactivity bar outlined in *Teague*. We find *Padilla* does not fit within either *Teague* exception and therefore does not apply retroactively to cases, like Hong's, on collateral review.

A new rule will apply retroactively to a final conviction only under very limited circumstances. *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive, or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."[11] *Whorton*,

---

[10](...continued)
§ 2255(f)(3) and § 2255(h)(2) to determine whether a circuit court may decide if a new rule applies retroactively to initial habeas petitions. *Compare* § 2255(f)(3) ("[T]hat right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.") *with* § 2255(h)(2) ("[A] new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court."). Those courts have concluded they can because § 2255(f)(3) "does not require that the initial retroactivity question be decided in the affirmative *only* by the Supreme Court." *United States v. Thomas*, 627 F.3d 534, 536–37 (4th Cir. 2010); *see also Wiegand v. United States*, 380 F.3d 890, 892 (6th Cir. 2004); *Dodd v. United States*, 365 F.3d 1273, 1278 (11th Cir. 2004) *aff'd* 545 U.S. 353 (2005); *United States v. Swinton*, 333 F.3d 481, 486–87 (3d Cir. 2003); *Fischer v. United States*, 285 F.3d 596, 599–600 (7th Cir. 2002); *United States v. Lopez*, 248 F.3d 427, 432 (5th Cir. 2001).

[11] Previously, the Supreme Court described the first *Teague* exception as applying to "rules forbidding punishment of certain primary conduct or to rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Beard*, 542 U.S. at 416. Recently, however, the Court explained "[r]ules that fall within what we have referred to as *Teague*'s first exception 'are more accurately characterized as substantive rules not subject to [*Teague*'s] bar.'" *Id.* at 411 n.3 (quoting *Schriro*, 542 U.S. at 352 n.4). *Padilla*'s rule does not implicate this category of rules, whether such rules are deemed

(continued...)

20

549 U.S. at 416 (quotation and alteration omitted). A substantive rule is one that "alters the range of conduct or the class of persons that the law punishes."[12] *Schriro*, 542 U.S. at 353. By contrast, a procedural rule "regulate[s] only the *manner of determining* the defendant's culpability."[13] *Id.*

The rule in *Padilla* is procedural, not substantive. It regulates the manner in which a defendant arrives at a decision to plead guilty. Thus, only the second *Teague* exception might apply here—as a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. *Id.* at 352. The exception is quite narrow, and since *Teague*, the Court has rejected every attempt to fit a case within the exception. *See Whorton*, 549 U.S. at 417–18

---

[11](...continued)
substantive or procedural falling within *Teague*'s first exception. *Cf. United States v. Price*, 400 F.3d 844, 848 n.2 (10th Cir. 2005).

[12] New substantive rules generally apply retroactively "because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 352 (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998)) (other quotations omitted). Substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro*, 542 U.S. at 351–52 (citation omitted).

[13] New procedural rules, unlike new substantive rules, "do not produce a class of persons convicted of conduct the law does not make criminal," but simply raise the potential that a defendant who was convicted under improper procedure may have been otherwise acquitted. *Schriro*, 542 U.S. at 352. Based on this "more speculative connection to innocence," the Supreme Court gives retroactive effect to a very small set of procedural rules that "implicat[e] the fundamental fairness and accuracy of the criminal proceeding" as represented in *Teague*'s second exception. *Id.*

(collecting cases).

To surmount this "watershed" requirement, a new rule (1) "must be necessary to prevent an impermissibly large risk of an inaccurate conviction," and (2) "must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Id.* at 418 (quotations omitted). Elevating the standard even more, a "showing that a new procedural rule is *based* on a 'bedrock' right" is insufficient because "a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." *Id.* at 420–21.

The Supreme Court has repeatedly identified its decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963)—recognizing an indigent defendant's right to counsel—as the only rule which, if *Gideon* had been decided after *Teague*, might have fallen within the second *Teague* exception. *See Whorton*, 549 U.S. at 418–19; *Beard*, 542 U.S. at 417–18. The Court has "not hesitated to hold that less sweeping and fundamental rules [than *Gideon*] do not fall within *Teague*'s second exception." *Beard*, 542 U.S. at 418; Steven W. Allen, *Toward a Unified Theory of Retroactivity*, 54 N.Y.L. SCH. L. REV. 105, 128 (2009-2010) (noting *Teague*'s second exception only "relates to errors of the highest magnitude").

Applying this rubric here, we conclude *Padilla* did not announce a watershed rule of criminal procedure and does not fall within *Teague*'s second exception to the retroactivity bar. Therefore, *Padilla* does not retroactively apply

22

to Hong's case on collateral review.

Simply put, *Padilla* is not *Gideon*. *Padilla* does not concern the fairness and accuracy of a criminal proceeding, but instead relates to the deportation consequences of a defendant's guilty plea. The rule does not affect the determination of a defendant's guilt and only governs what advice defense counsel must render when his noncitizen client contemplates a plea bargain. *Padilla* would only be at issue in cases where the defendant admits guilt and pleads guilty. In such situations, because the defendant's guilt is established through his own admission—with all the strictures of a Rule 11 plea colloquy—*Padilla* is simply not germane to concerns about risks of inaccurate convictions or fundamental procedural fairness.

Despite all this, Hong contends the Supreme Court *did* implicitly decide the issue of retroactivity in *Padilla*. We find Hong's argument unpersuasive. Nowhere in *Padilla* does the Supreme Court state even tangentially that its holding applies retroactively to cases on collateral review. Hong tacitly acknowledges this point but argues the Court's decision "strongly implies" *Padilla* applies retroactively. Aplt. Br. at 9.

In *Padilla*, the Court acknowledged it gave "serious consideration to the concerns" that its ruling might undermine the finality of convictions by opening the "floodgates" to challenges of convictions obtained through guilty pleas. 130 S. Ct. at 1484. The Court allayed these concerns by noting the same concerns

23

were raised in prior *Strickland* cases. Those past decisions did not lead to a flood of cases, likely because "[s]urmounting *Strickland*'s high bar is never any easy task"—a defendant must show deficient representation as well as prejudice. *Id.* at 1485. The Court went on to conclude

> It seems unlikely that our decision today will have a significant effect on *those convictions already obtained as the result of plea bargains*. . . . Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential.

*Id.* at 1485–86 (first emphasis added and citation omitted). Hong points to this language as evidence the Court decided the issue of *Padilla*'s retroactivity. He argues there would be no need to discuss pleas "already obtained" if the case did not apply retroactively. *See Orocio*, 2011 WL 2557232, at *7 ("[I]t is not unlikely that the *Padilla* Court anticipated the retroactive application of its holding on collateral review when it considered the effect its decision would have on final convictions."); *United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625, at *8 (E.D. Cal. July 1, 2010) ("If the Court intended *Padilla* to be a new rule which would apply only prospectively, the entire 'floodgates' discussion would have been unnecessary.").

We disagree. We interpret the Court's statement to simply recognize that past decisions enumerating the contours of *Strickland* have not led to a surfeit of collateral attacks on guilty pleas. The force of the Court's argument is that

24

*Padilla* would have a similar (lack of) effect on guilty pleas. In addition, we think it unwise to imply retroactivity based on dicta—and abandon the *Teague* analysis entirely. The *Teague* framework exists to promote the finality of convictions by shielding them from collateral attacks mounted on new procedural rules of constitutional law. To imply retroactivity from an isolated phrase in a Supreme Court opinion would completely ignore this goal.

In sum, we find *Padilla* did not announce a new watershed rule of criminal procedure that affects the fundamental fairness and accuracy of a criminal proceeding. It is not within either of the extremely narrow *Teague* exceptions to the retroactivity bar. Therefore, *Padilla* is a new rule of constitutional law but does not apply retroactively to cases on collateral review.

C. *Padilla* and § 2255(f)(3)

Because *Padilla* does not apply retroactively to cases on collateral review, the limitations period under § 2255(f)(3) does not apply here. Hong's motion was untimely because it was not filed within one year of his conviction becoming final, as required by § 2255(f)(1). Accordingly, no reasonable jurist could conclude the district court erred when it dismissed Hong's § 2255 motion as untimely.

## III. Conclusion

For the foregoing reasons, we DENY Hong's application for a COA and DISMISS his appeal.