Spain, J.
Appeal, by permission, from an order of the County Court of Broome County (Smith, J.), entered September 17, 2010, which denied defendant’s motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crime of attempted criminal sale of a controlled substance in the third degree, after a hearing.
In 2006, pursuant to a plea agreement, defendant waived indictment and pleaded guilty to one count of attempted criminal sale of a controlled substance in the third degree; the plea satisfied a superior court information charging him with four counts of criminal sale of a controlled substance in the third degree. The charges stem from a controlled purchase of cocaine by a confidential informant from defendant as part of an investigation into cocaine trafficking by the Village of Endicott police department. Sentenced in July 2007 to one year in jail, defendant did not appeal. After he was detained in September 2009 by immigration officials for removal, i.e. deportation, defendant, a non-United States citizen,[1] moved pursuant to CPL 440.10 to vacate the judgment of conviction on the ground that his plea was not knowing, voluntary and intelligent and he had been denied the effective assistance of counsel because his trial counsel (and County Court) failed to inform him of the immigration consequences of his 2006 guilty plea. County Court held a hearing at which defendant and his trial counsel testified. In a thorough written decision, the court denied defendant’s motion to vacate. Defendant now appeals, by permission.
Under federal law, defendant’s conviction as a resident alien for violating New York’s controlled substance laws renders him “deportable” (8 USC § 1227 [a] [2] [B] [i]; see 8 USC § 1101 [a] [43] [B]; People v Glasgow, 95 AD3d 1367-1368 [2012]; People v Reynoso, 88 AD3d 1162, 1163 [2011]). In Padilla v Kentucky (559 US —, — n 1, —, —, 130 S Ct 1473, 1477 n 1, 1483, 1486 [2010]), on which defendant relies, the United States Supreme Court ruled that where the immigration consequences of a guilty plea are clear, making deportation *1094 presumptively mandatory, defense counsel must accurately advise noncitizen clients that their pleas carry the risk of deportation. Under the Sixth Amendment right to counsel (see US Const 6th Amend), Padilla held that a defense counsel provides constitutionally deficient representation if he or she fails to accurately advise of those immigration consequences or misadvises a noncitizen client, who will be entitled to relief if “ ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different’ ” (Padilla v Kentucky, 559 US at —, 130 S Ct at 1482, quoting Strickland v Washington, 466 US 668, 694 [1984]; see Hill v Lockhart, 474 US 52, 58-59 [1985]).
Here, while the Broome County Public Defender was initially assigned to represent defendant on the drug charges, a conflict developed and John Scanlon was then assigned to represent defendant. Scanlon received defendant’s file from the Public Defender’s office, which included four interview sheets (for the four pending charges) containing background information regarding defendant, all indicating defendant’s citizenship as “US.” The parties stipulated at the hearing that a Public Defender intake specialist (who was excused on consent at the hearing and did not testify) filled in the interview sheets with information obtained from defendant.
Defendant testified that he came to the United States from St. Martin as a baby with his mother and has always resided in New York as a permanent resident. He never applied for United States citizenship, even after his mother did so (during his adulthood) and after learning — years prior to his plea — that his brother had been deported to St. Martin. He claimed he believed that he might have become an “automatic citizen” of the United States since he came as an infant. After his arrest in 2006, he met with Scanlon several times and participated in the plea negotiations, but never informed him of his noncitizenship status; they never discussed and he was not aware of the immigration consequences of his guilty plea. Defendant admitted to providing information about himself to the intake specialist who met with him after his arrest, but did not recall telling her he was a “US” citizen, instead claiming that he had indicated that his immigration status was “US Islands”; he did not, however, claim that he had ever mistakenly believed that St. Martin was a United States territory.
Scanlon, an experienced attorney, testified that he met with defendant several times to review the evidence against him, possible defenses, his sentencing exposure and the plea offers, and that defendant never informed him of his permanent resi *1095 dent status or raised any questions about the immigration consequences of a drug-related guilty plea. Scanlon did not raise the issue of potential immigration consequences with defendant during the plea negotiations because he had no reason to question defendant’s perceived United States citizenship,[2] as reported in the intake interview sheets. A review of the plea colloquy discloses that the issue was never raised on the record.
County Court properly denied defendant’s motion to vacate the judgment of conviction, finding that he had not met his burden of proving either that trial counsel was ineffective[3] or that his plea was not knowing, voluntary and intelligent (see CPL 440.30 [6], [7]). To the extent that defendant relies upon Padilla v Kentucky (supra) to establish that trial counsel’s performance — i.e., failure to advise him of the immigration consequences of his plea — was deficient under the Sixth Amendment, we note that Padilla and its progeny presuppose that defense counsel is aware at the time of the plea that a client is a noncitizen and, thus, is duty-bound to accurately advise, and not to misadvise, the client about the clear and serious immigration consequences of a guilty plea (see Padilla v Kentucky, 559 US at —, 130 S Ct at 1484 [In holding that Strickland applies to counsel’s failure to advise clients as well as to misadvice, the United States Supreme Court stated: “When attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all” (emphasis added)]).
There was no evidence here that Scanlon was aware that de *1096 fendant was a noncitizen, or that he should have been aware, or had any reason to raise the issue of defendant’s citizenship. We do not read Padilla, as defendant urges, as establishing an affirmative duty on the part of defense counsel to determine in every case a client’s immigration status; while this may be the better practice,[4] it has not been elevated to a constitutional mandate, and we decline to do so. We also defer to County Court’s decision, after observing defendant’s testimony,[5] to credit Scanlon’s account that he had no reason to question defendant’s citizenship (see People v Bodah, 67 AD3d 1195, 1196 [2009], lv denied 14 NY3d 838 [2010]).
We agree that defendant failed to establish that counsel’s representation “fell below an objective standard of reasonableness” (Strickland v Washington, 466 US at 688), i.e., on these facts the prevailing “practice and expectations of the legal community” (Padilla v Kentucky, 559 US at —, 130 S Ct at 1482) did not obligate Scanlon to inquire into defendant’s citizenship. Moreover, County Court correctly determined that defendant failed to establish prejudice, i.e., a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different” (Strickland v Washington, 466 US at 694), which “focuses on whether counsel’s constitutionally ineffective performance affected the outcome of the plea process” (Hill v Lockhart, 474 US at 59; see People v McDonald, 1 NY3d 109, 114 [2003]). Scanlon, with defendant’s active input, negotiated a highly favorable plea to a single reduced felony charge, with one year in jail,[6] in satisfaction of four class B felonies for which defendant could have received consecutive state prison sentences. Defendant’s testimony did not convincingly establish “that a decision to reject the plea bargain would have been rational under the circumstances” (Padilla v Kentucky, 559 US at —, 130 S Ct at 1485) or that “counsel’s performance rendered the [plea] proceeding fundamentally unfair *1097 or left an unreliable result” (People v Henry, 95 NY2d 563, 566 n [2000], citing Lockhart v Fretwell, 506 US 364, 369-370 [1993]). Thus, County Court correctly denied defendant’s motion to vacate his judgment of conviction to the extent that it was premised upon the Sixth Amendment right to the effective assistance of counsel as articulated in Padilla v Kentucky (supra) and Strickland v Washington {supra).
Likewise, defendant’s state constitutional claim that counsel’s failure to investigate his citizenship and advise him of the deportation consequences of his guilty plea deprived him of meaningful representation also lacks merit (see NY Const, art I, § 6; People v Benevento, 91 NY2d 708, 713 [1998]; see also People v Henry, 95 NY2d at 566). Under this analysis, we evaluate the prejudice component by focusing on the “fairness of the process as a whole rather than [any] particular impact on the outcome of the case” (People v Benevento, 91 NY2d at 714; see People v Henry, 95 NY2d at 566). Upon review of the record as a whole, viewed in totality, we find that — at the time of the plea proceedings — Scanlon provided meaningful representation (see People v Baldi, 54 NY2d 137, 147 [1981]).
Turning to defendant’s claim that County Court’s failure to advise him of the deportation consequences of his plea violated his due process rights, we note that while CPL 220.50 (7) requires a court to so advise a defendant on the record prior to accepting a guilty plea to a felony, the statute expressly provides that the failure to so advise “shall not be deemed to affect the voluntariness of a plea of guilty or the validity of a conviction” (CPL 220.50 [7]; see People v Gravino, 14 NY3d 546, 554 n 3 [2010]). Further, as a matter of New York law, deportation remains a collateral consequence[7] of a guilty plea (see People v Harnett, 16 NY3d 200, 205-206 [2011] [decided after Padilla]; People v Gravino, 14 NY3d at 559 [same]) of which the trial court is not required under due process principles to advise a defendant prior to accepting a guilty plea (see People v Gravino, 14 NY3d at 553-554, 559; People v Catu, 4 NY3d 242, 244 [2005]; People v Ford, 86 NY2d 397, 403-404 [1995]; People v Peque, 88 AD3d 1024, 1025 [2011]). Padilla spoke to the duties of defense counsel and did not expand the duties of a trial court in this regard (see People v Rosario, 93 AD3d 605, 605 [2012]).
*1098 Finally, defendant has failed to demonstrate that his plea was not knowing, voluntary and intelligent on the ground that he was not informed, and was not aware, that his guilty plea would have deportation consequences (see People v Fiumefreddo, 82 NY2d 536, 543 [1993]). County Court concluded that defendant, because of his family’s experiences, had every reason (and opportunity) to raise the issue with counsel if it was a decisive factor in his plea decision, but did not do so. We are aware that the Court of Appeals has recently recognized the possibility that a guilty plea made in ignorance of a collateral consequence of that plea “may sometimes be proved involuntary” (People v Harnett, 16 NY3d at 207 [“(T)here may be (rare) cases in which a defendant can show that he (or she) pleaded guilty in ignorance of a consequence that, although collateral for purposes of due process, was of such great importance to him (or her) that he (or she) would have made a different decision had that consequence been disclosed”]; see People v Gravino, 14 NY3d at 559). However, defendant has not persuasively demonstrated that a lack of knowledge of the deportation consequences of his guilty plea “reasonably could have caused him, and in fact would have caused him, to reject an otherwise acceptable plea bargain” (People v Harnett, 16 NY3d at 207).
Lahtinen, J.P., Malone Jr., Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed.

. Defendant, born in the French island of St. Martin, was reportedly deported to France in September 2011. We decline to dismiss this appeal on this ground (see People v Ventura, 17 NY3d 675, 679-682 [2011]).

. The narrow issue in this motion to vacate, as framed by defendant, is whether counsel’s failure to advise defendant, prior to his plea, of the immigration consequences of his plea constituted ineffective assistance of counsel. While the presentence report reflects that defendant is a “permanent resident,” defendant has never claimed in this motion that counsel’s failure to move to withdraw his guilty plea prior to sentencing, based upon that report, constituted ineffective assistance of counsel. We do not address that issue.

. Given our finding that defendant failed to satisfy the two-prong Strickland test for ineffective assistance of counsel at his plea, we need not decide whether Padilla is to be applied retroactively to defendant’s collateral attack upon his 2007 conviction. While Padilla, itself involving a motion for post-conviction relief, suggested it would apply to collateral challenges to final convictions but did not decide the issue (see 559 US at —, 130 S Ct at 1484-1486), the Federal Circuit Courts of Appeal are divided (compare United States v Chang Hong, 671 F3d 1147, 1158 [10th Cir 2011] [Padilla is not retroactive], and Chaidez v United States, 655 F3d 684, 686 [7th Cir 2011], cert granted 566 US —, 2012 WL 1468539, 2012 US LEXIS 3335 [2012] [same], with United States v Orocio, 645 F3d 630, 633 [3d Cir 2011] [Padilla is retroactive]; see also Hill v Holder, 454 Fed Appx 24, 25 n 2 [2d Cir 2012] [leaving question open]; State v Gaitan, 209 NJ 339, 371, 37 A3d 1089, 1107 [2012] [Padilla is not retroactive]).

. Notably, the American Bar Association guidelines on plea discussions and plea agreements advise that “[t]o the extent possible, defense counsel should determine and advise the defendant ... as to the possible collateral consequences that might ensue from entry of the contemplated plea” (ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2 [f], at 116 [3d ed 1999]).

. County Court, which had also presided over defendant’s sentencing, expressly concluded that there was “nothing about defendant’s name, appearance, behavior, speech pattern or accent [that] remotely suggests the defendant to be anything but an American [citizen].”

. While the plea agreement called for a nine-month jail sentence, defendant was released and failed to appear on the scheduled sentencing date. Arrested on a bench warrant, an enhanced sentence of one year in jail was imposed after defendant declined to move to withdraw his guilty plea when advised by County Court of its intentions to enhance the sentence.

. In Padilla, the United Supreme Court indicated that it has “never applied a distinction between direct and collateral consequences to define the scope of constitutionally ‘reasonable professional assistance’ required under Strickland” (Padilla v Kentucky, 559 US at —, 130 S Ct at 1481), and concluded that it did not need to determine whether this distinction is appropriate under federal law (id. at —, 1481-1482; see People v Gravino, 14 NY3d at 554 n 4).