# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CONN, HOFFMAN, and GIFFORD
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist DIEGO M. VARGASPUENTES**
**United States Army, Appellant**

ARMY 20091096

Headquarters, 8th Theater Sustainment Command
Donna M. Wright, Military Judge
Colonel James W. Herring, Staff Judge Advocate (pretrial)
Colonel Lisa Anderson-Lloyd, Staff Judge Advocate (post-trial)

For Appellant:  Captain A. Jason Nef (argued); Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA; Major Grace M. Gallagher, JA; Captain A. Jason Nef, JA (on brief in reconsideration); Major Grace M. Gallagher, JA; Captain A. Jason Nef, JA (on brief).

For Appellee:  Captain Stephen E. Latino, JA (argued); Colonel Norman F.J. Allen, III, JA; Lieutenant Colonel Martha L. Foss, JA; Major Christopher B. Burgess, JA; Captain Stephen E. Latino, JA (on reply brief in reconsideration); Major Lisa Gumbs, JA (on brief).

24 May 2011

-------------------------------------------------------------------
OPINION OF THE COURT ON RECONSIDERATION
-------------------------------------------------------------------

GIFFORD, Judge:

A military judge sitting as a general court-martial convicted appellant, consistent with his pleas, of wrongful distribution of a controlled substance (three specifications) and wrongful possession of a controlled substance, in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, confinement for two years, and reduction to Private (E-1).  The convening authority limited confinement to fifteen months, in accordance with a pretrial agreement, and otherwise approved the adjudged sentence.

VARGASPUENTES – ARMY 20091096

This case is before us for review pursuant to Article 66(c), UCMJ.  Appellant presented no specific assignment of errors to this Court, but did submit matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  We find none of the issues appellant raised pursuant to *Grostefon* to merit relief, although we discuss below the issue of ineffective assistance of counsel.

## BACKGROUND

In his *Grostefon* matters, appellant asserted, *inter alia*, that his trial defense counsel - Captain (CPT) KH - failed to inform him prior to trial of the consequences of his pleading guilty on his ostensible efforts to obtain United States citizenship.  Appellant submitted his *Grostefon* matters in the form of a typewritten, unsworn, unsigned document.  In that document, appellant alleged he asked CPT KH during a pretrial meeting whether the Immigration and Naturalization Service would find out about the charges against him, and she responded "it depends on how the court-martial goes."[1]  Appellant also asserts that on the day of trial he again asked CPT KH about the impact of the charges on his efforts to become a citizen and she "gave no advice to appellant on the matter."

This Court affirmed the findings and sentence in appellant's case, expressly noting its decision of his case based on the facts in the record of trial and consideration of the matters he submitted pursuant to *United States v. Grostefon*.  Appellant subsequently sought reconsideration of this Court's decision and submitted an affidavit in support.  As discussed below, the affidavit alleged ineffective assistance of counsel although it had modified some of the details regarding what appellant alleged he told CPT KH.  This Court denied the request for reconsideration, as appellant predicated his request primarily on the erroneous assertion that this Court had failed to consider his *Grostefon* matters.[2]

As a result of the Supreme Court's subsequent decision in *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473 (2010), this Court sua sponte ordered reconsideration of appellant's case and sua sponte granted appellant's motion to attach.  As discussed below, the Supreme Court's decision in *Padilla* directly impacted the analytical framework for reviewing claims of ineffective assistance of counsel claims in the context of guilty pleas by non-United States citizens.  *See generally Padilla*, __ U.S. __, 130 S. Ct. at 1482-87.

---

[1] Appellant does not state at what stage of pretrial discussions this alleged conversation occurred, e.g., fact-finding, negotiations, etc.

[2] This Court also denied the attendant motion to attach, although it expressly noted appellant could submit a request for reconsideration, as appropriate, in accordance with the Court's rules.

2

In the sworn statement filed with this Court, appellant avers that when he met with CPT KH during a pretrial meeting, he "specifically asked her on (sic) how my charges would affect my citizenship eligibility." Appellant states that CPT KH stated "it all depended on the outcome of [his] court-martial." Appellant further stated that on the day of trial he "brought up the same question on the effect of this trial on [his] citizenship." Appellant alleges that it was at this time that CPT KH "told [him] the severity of the charges [and that] she did not remember when [he] previously brought this issue up about not [being] a United States citizen." We note appellant's sworn statement materially varies from his *Grostefon* matters regarding what occurred between he and CPT KH at the one pretrial session and on the day of trial regarding the instant issue.

As a result of this Court's reconsideration, CPT KH filed an affidavit addressing appellant's allegations. In relevant part, CPT KH highlights her numerous pretrial meetings (sixteen dates listed) with appellant. Captain KH emphasizes that at no time during any of those pretrial sessions or on the day of trial did appellant inform her that he was not a United States citizen or that he was concerned about the impact that his guilty plea might have on his citizenship status.

Captain KH further relates that during pretrial sessions, appellant's focus was on "limiting his exposure to extended confinement as a result of a conviction." Captain KH notes the "possibility of extended jail time was the main factor in [appellant's] desire to plead guilty with the protection of a pretrial agreement." In so doing, CPT KH notes the "extensive evidence" in the case, the "likelihood that the government would secure a conviction was highly likely, if not certain," and briefly delineates the evidence in the case which supports her conclusion (e.g., a "source" cooperating with government agents and government agents purchased the various drugs from appellant and appellant's confession). Captain KH avers that nothing in her discussions with appellant or his personnel records made her aware that he was not a United States citizen.

Captain KH also comments she had numerous post-trial contacts with appellant and (in effect) he did not inform her of his non-citizen status until after several interactions and several weeks. Captain KH discusses her efforts to mitigate the impact of appellant's conviction. In support of her claim that she was not aware of appellant's non-United States citizen status until post-trial, CPT K.H. tenders a copy of a letter from appellant's wife - a fellow United States Army soldier. The letter was submitted to the convening authority as part of appellant's Rule for Courts-Martial 1105 and 1106 matters and, *inter alia*, advises the convening authority:

> I would like to bring to your attention something that
> makes this situation a little bit out-of-the-ordinary.

3

> Unfortunately, my husband is not a U.S. citizen.  He had planned to apply for citizenship while serving, but never got around to doing so.  He also did not make his legal counsel aware of this fact during their pre-trial preparation meetings, and only made them aware after all was said and done.

Captain KH plainly states that appellant's "assertions that he asked me about the impact of his guilty plea on his citizenship status are not true.  He never informed me about his citizenship concerns at any time prior to pleading guilty."

Appellant requests this Court order relief in the form of setting aside the findings and sentence.  In the alternative, appellant requests this Court order an evidentiary hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967).

## LAW

"Members of the armed forces are entitled to the effective assistance of counsel."  *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citing *United States v. Scott*, 24 M.J. 186, 187-88 (C.M.A. 1987); U.S. Const. amend. VI; Article 27(b), UCMJ (10 U.S.C. § 827(b)).  Claims of ineffective assistance of counsel are reviewed de novo.  *Tippit*, 65 M.J. at 76 (citing *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)).  The Supreme Court held, however, a reviewing court examining a claim of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

In *Strickland*, the Supreme Court established the now long-standing two-pronged standard for analyzing claims of ineffective assistance of counsel.  *Id*. at 687.  To overcome the presumption of competence, an appellant must establish:  "(1) a deficiency in counsel's performance that is 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment';[3]  and (2) that the 'deficient performance prejudiced the defense . . . [through] errors . . . so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[4]

---

[3] In *Strickland*, the first prong requires the examining court to determine whether a challenged counsel's performance "fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.

[4] Under *Strickland*, the second prong requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

*United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997) (quoting *Strickland*, 466 U.S. at 687).

In *Hill v. Lockhart*, the Supreme Court examined a claim of ineffective assistance of counsel in the context of a defendant who pled guilty. 474 U.S. 52 (1985). In *Hill*, the Supreme Court found the two-pronged standard from *Strickland* remains the standard when examining ineffective assistance of counsel claims in the guilty plea context. *Hill*, 474 U.S. at 59-60. In *Hill*, the Court nevertheless provided interpretative guidance of the *Strickland* standard specific to guilty plea contexts. *Hill*, 474 U.S. at 59-60.

The Supreme Court held that the first prong of the *Strickland* test remains "nothing more than a restatement of the standard of attorney competency" established by Supreme Court precedent. *Id.* In that regard, in *Strickland* the Supreme Court found that when analyzing the first prong (i.e., constitutional deficiency) in its two prong standard, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.

Distinct from its "status quo" interpretation regarding the first prong of *Strickland*, however, in *Hill* the Supreme Court modified the second prong of *Strickland* to "[focus] on whether counsel's constitutionally ineffective performance affected the outcome of the *plea process*." *Hill*, 474 U.S. at 60 (emphasis added). *See also United States v. Ginn*, 47 M.J. 236, 247-48 (C.A.A.F. 1997); *Tippit*, 65 M.J. at 77. Restated, an appellant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. *See also United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) and *Tippit*, 65 M.J. at 77. The test is objective. *Hill*, 474 U.S. at 60.

In *Padilla v. Kentucky*, the Supreme Court provided further interpretive guidance for analyzing ineffective assistance of counsel claims in the context of guilty pleas when non-United States citizen defendants are at issue. At issue in *Padilla* was a claim of non-United States citizen (Padilla) that his counsel was ineffective in failing to advise him that his guilty plea would have adverse immigration consequences. Notably, in *Padilla*, the Supreme Court reiterated that the first prong of *Strickland* was "constitutional deficiency" and repeated that when analyzing the prong: "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms. __ U.S. __, 130 S. Ct. at 1482 (quoting *Strickland*, 466 U.S. at 688). The Court then found "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation," although it is recognized that many counsel would not be well versed in immigration law. *Id.* at 1482-83. Thus, *Padilla* held (in effect) that when the consequences of the guilty plea vis-à-vis deportation are

unclear, counsel must do no more than advise, *inter alia*, that a guilty plea may carry an adverse risk regarding deportation; when the consequences of the guilty plea vis-à-vis deportation are truly clear, however, the duty to give correct advice is "equally clear." *Id*.[5]

## DISCUSSION

In the case *sub judice*, appellant claims that his counsel was ineffective by failing to inform him of the consequences of his guilty plea on his efforts to obtain citizenship. In support of his claim, appellant avers in two separate documents - one document being sworn - that he told CPT KH prior to and on the day of trial that he was not a citizen and questioned her about the impact of his guilty plea. Contrary to appellant's claims, CPT KH asserts that appellant made no mention of his citizenship status prior to or on the day of trial and expressed no concerns related to his citizenship. Captain KH notes that nothing in her discussions with appellant or his personnel records made her aware that he was not a United States citizen.[6]

"When challenging the performance of counsel, the defense bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *Tippit*, 65 M.J. at 76 (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). When there are conflicting post-trial affidavits in a case, the reviewing court must resolve the conflict under the principles articulated in *Ginn*, 47 M.J. at 248. In this case, as discussed below, we find the facts alleged by appellant, even if resolved in his favor, would not result in relief as he has failed to establish prejudice under the strict standard established in *Strickland* and its

---

[5] In *Padilla*, the Supreme Court found that based on the facts of that case the relevant federal law regarding the "removal" consequences for petitioner Padilla's conviction was clear. __ U.S. __, 130 S. Ct. at 1483. Thus, counsel's failure to provide correct advice to Padilla regarding the presumptively mandatory deportation consequences of his guilty plea amounted to constitutionally deficient advice under prevailing professional norms. *Id.* The issue of whether Padilla satisfied the second prong of *Strickland* (i.e., prejudice) was remanded to the lower court. *Id*. at 1483-84.

[6] The record contains information that is relevant to appellant's country of origin (e.g., Block IV, Enlisted Record Brief and appellant's acknowledgment of his birth country in his DA Form 2823). The information does not establish, however, appellant is not a United States citizen, although it is potentially relevant to the issue of counsel's duty to investigate. *See Strickland*, 466 U.S. 690-91. Because we resolve this issue based on prong two of *Strickland*, however, we do not substantively address this issue.

6

progeny.  Thus, we may resolve appellant's claim without resolving the factual dispute.  *Id.*[7]

In examining appellant's claim, "we need not determine whether any of the alleged errors [in counsel's performance] establish [] constitutional deficiencies under the first prong of *Strickland*  . . . [if] any such errors would not have been prejudicial under the high hurdle established by the second prong of *Strickland*." *Tippit*, 65 M.J. at 77 (quoting *United States v Saintaude*, 61 M.J. 175, 183 (C.A.A.F. 2005).  Appellant claims that he would not have pled guilty but for the defective advice of CPT KH in failing to inform him of the impact of his guilty plea on his citizenship status.  *See Hill*, 474 U.S. 59-60.  In support of his contention, appellant stated that his wife and son were in the United States and he would not have jeopardized his status in the United States by pleading guilty.  Appellant does not otherwise address why he would not have pled guilty and insisted on going to trial.  Considering the evidence put forth by appellant and for the reasons set forth below, we conclude appellant has failed to demonstrate that there is a reasonable probability that, assuming counsel committed error, he would not have pleaded guilty and would have insisted on going to trial.

The federal immigration statute pertinent to appellant's case is 8 U.S.C. § 1227(a)(2)(B)(i).  Title 8, Section 1227(a)(2)(B)(i), provides (in relevant part):

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21),[8] other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

The language of the statute is clear regarding the types of substances and category of persons to whom it applies.  Although the consequences of a conviction are clear for an alien who attains a qualifying conviction for a controlled substance (i.e., that person is "deportable"), as discussed below we find no reasonable

---

[7] *Ginn* factor one provides "if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis."  *Ginn*, 47 M.J. at 248.  *See also Tippit*, 65 M.J. at 77.

[8] The drugs distributed and possessed by appellant, as reflected on the charge sheet, qualify as "controlled substances" per 21 U.S.C. §§ 802 and are not otherwise excluded.

probability that appellant would have changed his plea had he been informed of the potential deportation consequences of pleading guilty.[9]

In contrast to appellant's unsupported allegations, the record of trial reflects that the evidence against appellant was compelling. Over an approximate three week time span, appellant distributed and sold various controlled substances. Specifically, on 26 January 2009, appellant sold five methadone pills to a Criminal Investigation Command (CID) "source" for $60.00. On 3 February 2009, appellant sold thirty methadone pills along with 0.11 grams of heroin for $380.00 to a CID "source" and undercover CID Drug Suppression Team (DST) agent. On 4 February 2009, appellant sold .8 grams of heroin to an undercover DST agent for $360.00. On 17 February 2009, appellant was in the process of selling thirty-nine pills of Oxycodone to an undercover DST agent when he was arrested by CID DST agents. When government agents searched appellant's vehicle incident to his apprehension, they found 0.3 grams of heroin in the vehicle. After being apprehended, appellant signed a written waiver of rights (DA Form 3881), agreed to speak, and subsequently rendered a written admission to some of the offenses (DA Form 2823). There are approximately fifty photographs incidental to appellant's attempted distribution of Oxycodone. For the charged offenses, appellant faced a potential sentence of a dishonorable discharge, fifty years confinement, reduction to Private (E-1), total forfeiture of pay, and a fine.

Appellant asserts he told CPT KH of his citizenship concerns during a pretrial session and on the day of his court-martial. Notwithstanding these claims, the record of trial reflects that while under oath on the day of trial, the appellant advised the military judge he had no questions about the meaning and effect of his guilty plea and he fully understood the terms of his pretrial agreement and how they affected his case.[10] Appellant also told the military judge he was satisfied with the

---

[9] In this regard, we note that for the purpose of prong one of *Strickland*, presuming that CPT KH was aware of appellant's citizenship, her obligation under *Padilla* was clear. *Padilla*, 130 S. Ct. at 1482. Counsel's obligation to investigate appellant's citizenship status, however, is fact-intensive. *See Strickland*, 466 U.S. 690-91. Because this opinion resolves the issue of ineffectiveness on prong two of *Strickland*, however, we do not substantively discuss prong one of *Strickland*.

[10] The military judge engaged appellant in a colloquy regarding, in effect, whether he was satisfied with and understood the terms of his pretrial agreement and was satisfied with his trial defense counsel. A colloquy between appellant and the military judge established the following:

(continued . . .)

advice of his counsel. Appellant's acknowledgments under oath that he did not have questions about his pretrial agreement, and his failure to raise to the military judge his concerns he had regarding pleading guilty, are significant to providing temporal information for this Court's analysis.

We further note that 8 U.S.C. § 1227(a)(2)(B)(ii), provides "[a]ny alien who is, or at any time after admission has been, a drug abuser or addict is deportable." The record of trial reflects that appellant states he became involved in drug distribution based on his own addiction to drugs and is also clear regarding appellant's own drug use and addiction. Thus, based on appellant's acknowledgment of drug abuse and addiction, appellant's risk of being "deportable" existed regardless of a conviction for controlled substances. The totality of appellant's situation is relevant when objectively considering the likelihood that he would not have pled guilty but for the (presumed) error of his counsel.

Based on the foregoing, we find that appellant has wholly failed to establish the prejudice required under *Strickland* in guilty plea cases and find there is no reasonable probability in this case that he would have changed his plea to the charged offenses and insisted on going to trial. *See e.g.*, *Hill*, 474 U.S. at 60.

---

(. . . continued)

- Appellant acknowledged he entered into the pretrial agreement of his own free will and that no one tried to force him to make the pretrial agreement.
- Appellant had no questions about his pretrial agreement.
- *Appellant acknowledged he fully understood all the terms of his pretrial agreement and how they affected his case.* (emphasis added).
- Appellant acknowledged he was pleading guilty because he was convinced he was in fact guilty and not just because he hoped to receive a lighter sentence.
- Appellant acknowledged that he had had enough time to discuss the case with his defense counsel.
- Appellant acknowledged he consulted fully with his defense counsel and received the full benefit of her advice.
- Appellant acknowledged that [CPT KH's] advice was in his best interest.
- Appellant acknowledged he was satisfied with [CPT KH] as his defense counsel.
- Appellant acknowledged he was pleading guilty voluntarily and of his own free will.
- Appellant had no questions about the meaning and effect of a plea of guilty.
- Appellant fully understood the meaning and effect of his plea of guilty.
- Appellant understood that even though he may be guilty, he had a legal and moral right to plead not guilty and place the burden on the government to prove his guilt beyond a reasonable doubt.

## CONCLUSION

We have considered the matters appellant raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find them to be without merit. The findings of guilty and sentence are AFFIRMED.

Senior Judge CONN and Judge HOFFMAN concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court