# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**Specialist REINEL CASA-GARCIA**
**United States Army, Petitioner**
v.
**UNITED STATES OF AMERICA, Respondent**

ARMY MISC 20111047

For Petitioner: Mr. Virlenys H. Palma, Esquire (on brief, reply brief & on brief in response to specified issue); Major Richard E. Gorini, JA; Captain James S. Trieschmann, Jr., JA (additional pleadings).

For Respondent: Colonel Michael E. Mulligan, JA; Major Ellen S. Jennings, JA; Captain Chad M. Fisher, JA (on brief); Lieutenant Colonel Amber J. Roach, JA; Captain Chad M. Fisher, JA (on brief in response to specified issue).

28 August 2012

-----------------------------------------------------------------
OPINION OF THE COURT AND ACTION
ON PETITION FOR EXTRAORDINARY RELIEF
IN THE NATURE OF A WRIT OF CORAM NOBIS
-----------------------------------------------------------------

KERN, Senior Judge:

This is a petition for extraordinary relief in the nature of a writ of *coram nobis*. *See* 28 U.S.C. § 1651(a) (2006). Petitioner, whose direct appeal is final and is now facing deportation, alleges that he received ineffective assistance of counsel when his trial defense counsel failed to inform him that he could be deported if he pleaded guilty. In this respect, petitioner is seeking the retroactive application of *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), to his case. We hold that petitioner is not entitled to *coram nobis* relief because *Padilla* established a new rule that is not retroactively applicable. We further conclude that, even were we to assume deficient performance in this case, petitioner's claim does not establish prejudice.

I

In February 2005, petitioner was approached by a finance clerk, whom he knew as "Frank," with a scheme to steal money from the U.S. government. Pursuant to the scheme, petitioner would make a false claim for entitlements he was not authorized to receive, and Frank would fraudulently arrange for money to be paid from the U.S. government to petitioner. Frank and petitioner would then share the stolen funds. Petitioner agreed to the scheme, and in the months that followed, Frank arranged for the deposit of over $60,000.00 to petitioner's bank account.

These thefts were ultimately discovered, and petitioner made a full confession about his role in the fraudulent scheme.

On 2 June 2006, a military judge sitting as a general court-martial convicted petitioner, pursuant to his pleas, of conspiracy, larceny, and making a false claim, in violation of Articles 81, 121, and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, 932 (2000) [hereinafter UCMJ]. The military judge sentenced petitioner to a bad-conduct discharge, confinement for thirteen months, total forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence. Petitioner's case was then reviewed by this court pursuant to Article 66, UCMJ, and the findings and sentence were summarily affirmed. *United States v. Casa-Garcia*, ARMY 20060508 (Army Ct. Crim. App. 8 June 2007). Petitioner did not file an appeal to the Court of Appeals for the Armed Forces (CAAF), and his bad-conduct discharge was ordered executed on 26 October 2007.

On 23 November 2011, petitioner filed with this court the instant petition for extraordinary relief in the nature of a writ of *coram nobis*, alleging that he received ineffective assistance of counsel when his defense counsel failed to inform him of the immigration consequences of his guilty pleas. We ordered the government to show cause why the writ should not issue, and it filed an answer brief on 21 December 2011. Petitioner thereafter filed an affidavit and a reply brief.

In his affidavit, petitioner states that he is a Cuban national who became a lawful permanent resident of the United States in 1999. After serving his court-martial sentence, petitioner visited Cuba in 2010, and upon reentry to the United States, was informed that he was a visiting alien. On 9 November 2010, a deportation order was issued for petitioner to be immediately deported from the United States as a consequence of his court-martial conviction.[1] Petitioner avers that his defense counsel, Captain (CPT) JR, did not advise him of the deportation consequences associated with a court-martial conviction. Petitioner states that he did not know deportation could occur as a result of his conviction, and further states, "Had I known that my plea would result in such consequences I would not have pled guilty to the charges against me at that time."

Captain JR thereafter filed an affidavit, confirming that he did not advise petitioner of the potential immigration consequences of his guilty pleas. Captain JR states that petitioner informed him of his nationality, but did not request any

---

[1] Petitioner is facing removal pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006), which states that an alien is ineligible to be admitted to the U.S. if he or she is convicted of a crime involving moral turpitude.

information regarding the immigration consequences of his pleas. Instead, petitioner's main concerns were limiting any potential confinement and avoiding a punitive discharge. Captain JR states, "From the beginning of my representation of [petitioner, he] insisted that he wanted to plead guilty and wanted to benefit from cooperating with the government." Captain JR further noted that petitioner was not married and did not have any dependents.

After receiving the affidavits from petitioner and CPT JR, we ordered further briefing on the issue of ineffective assistance of counsel in light of the facts set forth in the affidavits. Petitioner points to CPT JR's candid admission that he knew of his nationality but failed to advise him of potential immigration consequences as conclusive proof of deficient performance. In response, the government argues that we need not reach the issue of deficient performance because petitioner cannot establish prejudice.

II

Petitioner's claim of ineffective assistance of counsel is before this court in a petition for extraordinary relief in the nature of a writ of *coram nobis*. Pursuant to the All Writs Act, military Courts of Criminal Appeals are empowered to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2006). *See Denedo v. United States (Denedo I)*, 66 M.J. 114, 124 (C.A.A.F. 2008); *United States v. Frischholz*, 16 U.S.C.M.A. 150, 152, 36 C.M.R. 306, 308 (1966). In modern practice, writs of *coram nobis* may issue to correct factual errors and legal errors of the most fundamental character, to include violations of constitutional rights. *United States v. Denedo (Denedo II)*, 556 U.S. 904, 911 (2009). Intrinsically, *coram nobis* relief is "an extraordinary remedy predicated on exceptional circumstances not apparent to the court in its original consideration of the case." *Dew v. United States*, 48 M.J. 639, 649 (Army Ct. Crim. App. 1998) (en banc) (plurality opinion). More precisely, in the military justice system a petitioner must satisfy several stringent threshold requirements in order to obtain *coram nobis* relief:

> (1) the alleged error is of the most fundamental character; (2) no remedy other than *coram nobis* is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously

considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist.[2]

*Denedo I*, 66 M.J. at 126 (citing *United States v. Morgan*, 346 U.S. 502, 512–13 (1954); *Loving v. United States (Loving I)*, 62 M.J. 235, 252–53 (C.A.A.F. 2005)).

This court applies a two-tiered evaluation for *coram nobis* review of ineffective assistance of counsel claims. "In the first tier, the petitioner must satisfy the threshold requirements for a writ of *coram nobis*, as described above. If the petitioner does so, the court then analyzes, in the second tier, the ineffective assistance of counsel claim . . . ." *Denedo I*, 66 M.J. at 126.

In this case, petitioner's writ meets the threshold criteria for *coram nobis* review. The first three criteria are satisfied because the error is of fundamental character, there is no other remedy, and the immigration consequences of his plea did not become known to petitioner until deportation proceedings were initiated, which was well after direct review of his case was completed. As for the fourth criteria (whether the immigration consequences could have been discovered using reasonable diligence), we also conclude it is satisfied. Although petitioner did not specifically ask about the immigration consequences of his plea, petitioner did inform his defense counsel that he was originally from Cuba. In these circumstances, the current state of the law would place a duty upon a defense counsel to advise his client of the immigration consequences of his plea. *Padilla v. Kentucky,* 130 S.Ct. 1473 (2010). Therefore, in evaluating the petition currently before us, we conclude petitioner exercised reasonable diligence in relying on his defense counsel's advice. The final two criteria are also satisfied as this issue was not previously litigated and, although the sentence has been served, serious consequences of appellant's conviction persist.

III

After reaching our conclusion that petitioner's writ warrants review, the paramount question for this court is whether the duty established in *Padilla* applies

---

[2] This court formerly applied a four-part inquiry to evaluate a writ of error *coram nobis*. *See Tillman v. United States*, 32 M.J. 962, 965 (A.C.M.R. 1991) ("In order to obtain relief, a petitioner must satisfy the heavy burden of establishing that: (1) an error had been made that was unknown to him during appeal; (2) a more usual remedy is unavailable; (3) valid reasons exist for not previously attacking the conviction; and, (4) the error was of such a fundamental nature as to render the proceedings irregular and invalid." (internal citation omitted)). Although not incorrect, and arguably inclusive of the current criteria, it is no longer the standard for evaluating a *coram nobis* petition.

retroactively in evaluating the merits of petitioner's ineffective assistance of counsel claim. The Sixth Amendment guarantees an accused the right to effective assistance of counsel. U.S. Const. amend. VI; *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). "In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984)." *Gooch*, 69 M.J. at 361. To overcome the presumption of competence, the *Strickland* standard requires appellant to demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687).

In *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), the Supreme Court held that a defense counsel's performance is deficient where he or she fails to inform a non-U.S. citizen of the immigration consequences of pleading guilty. The Supreme Court applied the standard from *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985), and concluded that the "weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Padilla*, 130 S.Ct. at 1482. "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" *Id.* at 1484 (quoting *Hill*, 474 U.S. at 62 (White, J., concurring in judgment)).

In this case, petitioner was not informed by his defense counsel, CPT JR, that he could face deportation from the United States as a result of his convictions. Citing *Padilla*, petitioner alleges that he was therefore denied the effective assistance of counsel when he entered guilty pleas without this advice. However, *Padilla* was not decided until after petitioner's case completed appellate review. In that respect, petitioner now seeks the retroactive application of the *Padilla* decision to collaterally attack his convictions.

Subject to certain exceptions, when a new rule of criminal law is announced, that rule does not apply to cases that have become final. *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion); *Griffith v. Kentucky*, 479 U.S. 314 (1987); *Loving v. United States (Loving II)*, 64 M.J. 132 (C.A.A.F. 2006). To assess the retroactivity of a constitutional rule, this court must determine (1) whether petitioner's conviction is final, (2) whether the rule is actually "new," and (3) if the rule is new, whether an exception to nonretroactivity applies. *Beard v. Banks*, 542 U.S. 406, 411 (2004). In this case, petitioner's convictions and sentence are final because there is a final

judgement as to the legality of the proceedings under Article 71(c)(1)(A), UCMJ.[3] *See Loving II*, 64 M.J. at 136–37. Therefore, the *Padilla* decision is not applicable to petitioner's case unless it is not a new rule or it falls within one of two exceptions.

Whether *Padilla* created a new rule is a matter of first impression for this court. To determine whether *Padilla* created a new rule, we must "ask whether the Constitution, as interpreted by the precedent then existing, compels the rule." *Beard*, 542 U.S. at 411 (citing *Saffle v. Parks*, 494 U.S. 484, 488 (1990)). Four federal circuit courts have addressed this issue.[4] In *United States v. Orocio*, 645 F.3d 630, 638–40 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit determined that *Padilla* was not a new rule because it simply applied the existing ineffective assistance of counsel framework developed in *Strickland*: "*Padilla* followed from the clearly established principles of the guarantee of effective assistance of counsel." However, the United States Courts of Appeals for the Fifth, Seventh, and Tenth Circuits reached the opposite conclusion. In *United States v. Chang Hong*, 671 F.3d 1147, 1156 (10th Cir. 2011), for example, the Tenth Circuit specifically disagreed with *Orocio*, stating "*Padilla* extended the Sixth Amendment right to effective counsel and applied it to an aspect of a plea bargain previously untouched by *Strickland*." And in *Chaidez v. United States*, 655 F.3d 684, 689 (7th Cir. 2011), the Seventh Circuit disagreed with *Orocio*, holding that the outcome in *Padilla* "was not dictated by precedent" and therefore constitutes a new rule. In support of this conclusion, the *Chaidez* Court pointed to the disagreement on the Supreme Court in the *Padilla* decision itself, and the Supreme Court's suggestion that its precedent "does not control the question before us," *Padilla*, 130 S.Ct. at 1485 n.12 (discussing *Hill v. Lockhart*, 474 U.S. 52 (1985)). *Chaidez*,

---

[3] Petitioner's case is also final under Article 76, UCMJ, because his sentence was executed.

[4] *United States v. Orocio*, 645 F.3d 630, 638–40 (3d Cir. 2011); *United States v. Amer*, 681 F.3d 211 (5th Cir. 2012); *Chaidez v. United States*, 655 F.3d 684, 689 (7th Cir. 2011); *United States v. Chang Hong*, 671 F.3d 1147, 1156 (10th Cir. 2011). *See also United States v. Mathur*, 685 F.3d 396, 398–99 (4th Cir. 2012) (assuming without deciding that *Padilla* created a new rule); *Figuereo-Sanchez v. United States*, 678 F.3d 1203, 1208 (11th Cir. 2012) (assuming without deciding that *Padilla* created a new rule); *Hill v. Holder*, 454 Fed. Appx. 24, 25 n.2 (2d Cir. Jan. 6, 2012) (unpub. order denying review) (noting "that it is an open question in this circuit whether the rule articulated in *Padilla* applies retroactively"); *United States v. Hernandez-Monreal*, 404 Fed. Appx. 714, 715 n.* (4th Cir. Dec. 6, 2010) (per curiam) (unpub.) (noting that "nothing in the *Padilla* decision indicates that it is retroactively applicable"); *Ufele v. United States*, 825 F.Supp. 2d 193 (D.C. 2011) (holding that *Padilla* created a new rule that is not retroactively applicable).

655 F.3d at 689.  The Supreme Court recently granted certiorari to address this issue.  *Chaidez v. United States*, 132 S.Ct. 2101 (2012) (grant of certiorari).

We agree with the Fifth, Seventh, and Tenth Circuits that *Padilla* created a new rule.  As the Supreme Court itself noted, many different federal and state courts that have addressed the issue prior to *Padilla* held that the "failure of defense counsel to advise the defendant of possible deportation consequences is not cognizable as a claim for ineffective assistance of counsel."  *Padilla*, 130 S.Ct. at 1481 & n.9 (quoting *Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008)) (collecting cases).  The same is true of military jurisprudence.  Prior to *Padilla*, military case-precedent would not compel a finding of deficient performance in these circumstances.  Our superior court explicitly stated in *Denedo I*, 66 M.J. at 129, that "[a]n attorney's failure to advise an accused of potential deportation consequences of a guilty plea does not constitute deficient performance under *Strickland*."  *See also United States v. Berumen*, 24 M.J. 737, 742 (A.C.M.R. 1987).  In light of this precedent, it is clear *Padilla* created a new rule that would now compel a finding of deficient performance.

Finally, the new rule announced in *Padilla* does not fall into either of the two exceptions to nonretroactivity.  A new constitutional rule "should not be applied retroactively to convictions on collateral review that have become final," unless the new rule is a "substantive" new rule, or a "watershed" rule of criminal procedure.  *Loving II*, 64 M.J. at 136, 138–140.  The *Padilla* decision falls into neither of these categories.  A substantive rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe."  *Teague*, 489 U.S. at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971)).  For example, "[a] decision that modifies the elements of an offense is normally substantive rather than procedural."  *Schriro v. Summerlin*, 542 U.S. 348, 354 (2004).  The *Padilla* decision did not place petitioner's crimes beyond the power of a court-martial to punish; therefore, it did not create a "substantive" new rule.  A "watershed" procedural rule is one that calls into question the very accuracy of the conviction itself—it is a procedure "without which the likelihood of an accurate conviction is seriously diminished."  *Teague*, 489 U.S. at 313.  *Padilla*'s holding does not fit this category either because it concerns advice to be rendered in anticipation of a guilty plea, not a procedure through which the reliability of the guilty plea itself is to be ensured.

IV

Consequently, when considering the instant petition we will not apply the rule announced in *Padilla*, and as discussed above, petitioner's claim of deficient performance does not find support in the law prior to *Padilla*.  In this respect, it is important to note that petitioner has not alleged that he asked CPT JR about any immigration consequences or that these were petitioner's primary concern.

Accordingly, we conclude petitioner cannot establish deficient performance in this case. *See Denedo I*, 66 M.J. at 129.

Assuming arguendo that *Padilla* is retroactive in application, petitioner's claim also fails to establish prejudice under the second prong of *Strickland*. To establish prejudice in a guilty plea case, petitioner is required to show that, "but for counsel's deficient performance, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial." *United States v. Rose*, 71 M.J. 138, 143 (C.A.A.F. 2012) (quoting *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007)) (internal quotation marks omitted). *See Hill v. Lockhart*, 474 U.S. 52 (1985); *United States v. Vargaspuentes*, 70 M.J. 501 (Army Ct. Crim. App. 2011), *pet. denied*, 70 M.J. 359. Petitioner's claim that he would not have pled guilty if he had known about the immigration consequences is not supported by the facts in his case.

Petitioner confessed to his role in the conspiracy and theft of money from the government. In addition, as CPT JR states in his affidavit, other soldiers involved in the conspiracy also confessed, and the government finance office had records proving petitioner's receipt of unauthorized entitlements. In short, the evidence against petitioner was overwhelming, the potential maximum sentence for his crimes included fifteen years' confinement, and the negotiated, twenty-month cap on confinement in his plea deal was very favorable. In addition, at the time of the offense, petitioner was unmarried and did not have dependents remaining in the United States in the event of deportation. Finally, petitioner has not offered an alternative option that he could have chosen to avoid deportation. Here, petitioner is facing removal for conviction of a crime involving moral turpitude, and "[c]rimes involving the intent to deceive or defraud are generally considered to involve moral turpitude." *Lateef v. Department of Homeland Security*, 592 F.3d 926, 929 (8th Cir. 2010) (collecting cases). In some cases, there may be alternative offenses to which an accused can offer to plead guilty that do not require deportation. In this case, however, petitioner has not articulated any non-qualifying offenses to which he could have pled. Accordingly, we find that appellant suffered no prejudice because there is no reasonable probability that he would have pled not guilty even if he had known about the potential immigration consequences.

V

In conclusion, although petitioner's claim satisfies the threshold criteria for *coram nobis* review, his claim of ineffective assistance of counsel is without merit. The performance of petitioner's defense counsel was not deficient, as *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), is not retroactively applicable to this case, and petitioner was not prejudiced by his defense counsel's representation. Therefore, petitioner's claim fails on both prongs of *Strickland v. Washington*, 466 U.S. 668

(1984). Accordingly, the Petition for Extraordinary Relief in the Nature of a Writ of Error *Coram Nobis* is DENIED.

Chief Judge AYRES, Senior Judge COOK, Judge JOHNSON, Judge GALLAGHER, Judge ALDYKIEWICZ, Judge HAIGHT, Judge BURTON, and Judge MARTIN concur.


KRAUSS, Judge, with whom Senior Judge YOB joins, dissenting in part, and concurring in part and in the result:

I disagree with my learned colleagues as to the retroactive application of the Supreme Court's decision in *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). I understand *Padilla* to plainly contemplate the retroactive application of its decision to cases arising after enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) and to declare that, as of the enactment of the IIRIRA, a defense counsel's failure to inform a client of the possible consequences of conviction on the client's immigration status constitutes deficient performance. *Padilla*, 130 S.Ct. at 1480, 1484–86;[*] *United States v. Orocio*, 645 F.3d 630, 641–43 (3rd Cir. 2011); *Commonwealth v. Clarke*, 949 N.E.2d. 892, 903–05 (Mass. 2011); *Denisyuk v. State*, 30 A.3d 914, 923 (Md. 2011); *Chaidez v. United States*, 655 F.3d 684, 698–99 (7th Cir. 2011) (Williams, J., dissenting); s*ee also Lafler v. Cooper*, 132 S.Ct. 1376, 1389–90 (2012); *Vartelas v. Holder*, 132 S.Ct. 1479, 1483–84, 1487 (2012). "[B]ecause *Padilla* followed directly from *Strickland* and long-established professional norms, it is an 'old rule' for *Teague* purposes and is retroactively applicable" to appellant's case as he pled guilty pursuant to a plea trial agreement in 2005. *Orocio*, 645 F.3d at 641 (referring to *Strickland v. Washington*, 466 U.S. 668 (1984), and *Teague v. Lane*, 489 U.S. 288 (1989)); *see also Chaidez*, 655 F.3d at 697 (Williams, J., dissenting). I therefore respectfully dissent as to that part of the majority opinion.

Because appellant has established his counsel's failure to advise in accordance with the professional norms described in *Padilla*, he satisfies the first prong of *Strickland*. *Padilla*, 130 S.Ct. at 1483. I agree with the majority that

---

[*] "It seems unlikely that our decision today will have a significant effect on those convictions already obtained as the result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea. See, *supra*, at 1483–1484. We should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052." *Padilla*, 130 S.Ct. at 1485.

appellant fails to satisfy the second prong of *Strickland*. Indeed, his mere allegation that he would have pled not guilty if he would have been properly advised falls far short of that required to demonstrate sufficient prejudice for relief in this jurisdiction under the circumstances of this case. *See United States v. Vargaspuentes*, 70 M.J. 501 (Army Ct. Crim. App. 2011), *pet. denied*, 70 M.J. 359. Appellant fails to convince that a decision to reject the pretrial agreement in this case would have been rational under the circumstances. Therefore, I concur with that part of the majority's opinion relative to prejudice under *Strickland* and concur in the result.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court